UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ISRAEL PENA,

        Plaintiff,

    v.

UNITED STATES POSTAL SERVICE, et al.,

        Defendants.

Case No. 18-cv-03923-JCS

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Re: Dkt. No. 21

## I.    INTRODUCTION

Plaintiff Israel Pena initiated suit against his employer United States Postal Service and Postmaster General of the United States Megan J. Brennan (collectively, "USPS"), as well as several unidentified and unserved Doe Defendants, for unlawful employment practices and retaliation under Title VII, the Rehabilitation Act, and the Age Discrimination in Employment Act ("ADEA").  Pena appears as a pro se litigant.[1]  USPS moves to dismiss Pena's six claims for failure to exhaust administrative remedies or sufficiently state a claim for relief.  The Court held a hearing on the Motion on Friday, December 21, 2018 and stayed discovery pending its ruling or until the next case management conference.  *See* Dkt. No. 32.  For the reasons stated below, the Motion is GRANTED.[2]

## II.    BACKGROUND

### A.    Factual Allegations[3]

Israel Pena began working as a USPS letter carrier in April 1984 and served as an

---

[1] Pena filed his original complaint and his operative first amended complaint pro se.  He later gained the assistance of counsel who filed the opposition to the instant motion.  However, Pena is no longer represented by counsel and again appears pro se.  *See* Dkt. No. 37.

[2] The parties have consented to the jurisdiction of the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(c).

[3] The following factual background is based on allegations of the first amended complaint and the documents attached thereto, including a portion of Pena's administrative record.  Documents attached to a complaint "are properly a part of the court's review as to whether [a] plaintiff can prove any set of facts."  *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426, 429–30 (9th Cir. 1978); *see also* Fed. R. Civ. P. 10(c).  In the context of employment discrimination, a court may also judicially notice the existence of a plaintiff's administrative record, but not the truth of the facts contained therein.  *McCarthy v. Brennan*, 230 F. Supp. 3d 1049, 1055 n.3 (N.D.

employee in this position for over thirty years. 1st Am. Compl. ("FAC," dkt. 7) ¶¶ 19–20. Pena is a 60-year-old Hispanic male. *Id.* ¶ 19 & Ex. D. He suffered from a right knee injury in late 2010 and had surgery to repair his knee in September 2010. *Id.* ¶ 22. Pena resumed his normal work in January 2011. *Id.* In March 2011, Pena's then supervisor, Postmaster Anna Karmelita, told Pena he was going to be assigned a "park and loop" route which meant the route "requires the letter carrier to walk and carry a satchel in order to deliver mail." *Id.* ¶ 24. Pena informed Karmelita that he had been having pain in his knee and did not believe he could do the route. *Id.* Karmelita told Pena he would need a doctor's note. *Id.* On March 16, 2011, Pena obtained a doctor's note stating that "until further notice" he "[could] not deliver mail using a satchel" or engage in the "constant activity of going in and out of [a] vehicle." *Id.* ¶ 25 & Ex. B. Pena provided Karmelita this note the next business day. *Id.* ¶ 25. Pena remained on his regular route and adhered to these limitations throughout 2011. *Id.*

In January 2012, Pena's new supervisor, Warner Lopez, approached Pena to assign him a new route. *Id.* ¶ 26. Pena "advised Lopez of his doctor's note on file . . . [and] Lopez appeared to be angry, stomped his feet and walked away." *Id.* Lopez returned on February 24, 2012, and "insisted" that Pena work a route incompatible with Pena's medical instruction. *Id.* ¶ 27. On March 2, 2012, Lopez informed employees at Pena's USPS office that "a satchel must be used and that handcarts would not be permitted" on all park and loop routes. *Id.* ¶ 28. "On March 10, 2012[,] Lopez gave [Pena] a direct order [to] . . . complete a route and perform duties contrary to [Pena's] physician's directive." *Id.* ¶ 29. Pena complied with Lopez's order "because he believed that he would be insubordinate if he refused." *Id.* That day Pena "sustained injuries to his knee [while] completing his duties." *Id.* On March 15, 2012, Lopez again directly ordered Pena "to complete a route and perform duties contrary to [Pena's] physician's directive" which caused him to "severely injur[e] his knee." *Id.* ¶ 31. Pena was assigned office duties the following day until around April 15, 2012. *Id.* ¶ 32.

---

Cal. Jan. 27, 2017). The Court assumes the allegations in Pena's first amended complaint to be true and draws all reasonable inferences from those allegations in favor of Pena when summarizing the underlying facts upon which Pena's claims are based.

Pena requested mediation by the USPS Equal Employment Opportunity office ("EEO") in April 2012, and on May 4, 2012, Pena, Lopez, and Karmelita signed an EEO mediation agreement placing Pena on "modified work activity" until May 15, 2012. *Id.* ¶ 34 & Ex. C. Pena alleges that "additional acts of discrimination and harassment were committed against [him] by management . . . in June of 2012." *Id.* ¶ 35. On October 8, 2012, Pena received a new doctor's note describing his same physical limitations. The note prohibited Pena from "carry[ing] a satchel, []or conduct[ing] activities that required him to repetitively enter/exit his vehicle." *Id.* ¶ 36.

"In February 2013, [Pena] wrote a letter to the postmaster general [sic][4] complaining of his injury resulting from [the] discriminatory practices and harassment he ha[d] been experiencing in his office."[5] *Id.* ¶ 37. "On February 13, 2013, [Pena] was interviewed by an employee from human resources . . . [and] on that same day, [Pena]'s vehicle was vandalized." *Id.* In April 2013, "District Manager Rosemary Fernandez and Director of Human Resources Irma Zine further threatened [Pena] stating that if he sent another grievance letter to the Postmaster General he would be fired," *id.* ¶ 41, and "[o]n August 9, 2013, Lopez and Postmaster Karmelita directed [Pena] to get out of his vehicle and deliver mail to a residence." *Id.* ¶ 42. Pena disclosed to his doctor on October 11, 2013 "that Lopez had been forcing him, through intimidation and other tactics[,] to perform tasks that he [was] expressly forbidden to do." *Id.* ¶ 43. Two months later, Lopez was promoted and became Pena's direct supervisor. *Id.* ¶ 44.

In February 2014, Lopez told Pena of a "'change' to [Pena's] physician's directive" that now allowed Pena "to enter and exit his vehicle, but no more than two time[s] per hour," despite Pena having "no knowledge of this purported change." *Id* ¶ 45. Pena requested another investigation "by the Inspector General's office" in April 2014, and "around May 2014, [Pena] was threatened by Postmaster Jason Kirrane, who warned [Pena] that if he contacted the Inspector

---

[4] Pena's allegations subsequently suggest he may have contacted the "Inspector General's office" rather than the postmaster general. *See, e.g.*, FAC ¶ 47. It is unclear whether these references are intended to describe outreach that Pena made only to the postmaster general, only to the inspector general, or both separately. *Compare id.* ¶¶ 46–48, *with id.* ¶¶ 37, 41.
[5] Pena does not further describe what "discriminatory practices and harassment" he had been experiencing.

3

General's office again in order to pursue a charge of discrimination, [he] would be terminated from his position." *Id.* ¶¶ 47–48. That same month, Lopez told Pena on several occasions that he would "find out" if Pena was performing inadequately at his job and would subject Pena to disciplinary actions. *Id.* ¶ 49.

Pena submitted another doctor's note on May 24, 2014. *Id.* ¶ 50 & Ex. F. However, he later received a USPS letter stating that the last medical note received by USPS was dated April 7, 2014. *Id.* ¶ 51. Pena went on medical leave in October 2014, receiving as disability payments 75% of his regular wages. *Id.* ¶ 52.

### B. Procedural History

Pena requested pre-complaint counseling on April 2, 2012. *Id.* ¶ 33; Riddle Decl. (dkt. 21-1) Ex. D. The parties then signed an EEO settlement agreement on May 4, 2012. FAC ¶ 34. On November 29, 2017, Pena again initiated contact with the USPS's EEO. *Id.* ¶ 13; *see also* Riddle Decl. Ex. D. On February 27, 2018, the EEO issued a "Notice of Right to File" a formal complaint, FAC Ex. D., and Pena filed a formal administrative complaint on March 12, 2018, *id.* Ex. F. *See also* Riddle Decl. Ex. A. On or around April 5, 2018,[6] Pena received a final agency decision dismissing his EEO claims and granting him a right to either sue in federal court or appeal the agency's decision to the Equal Employment Opportunity Commission ("EEOC"). FAC ¶ 16; *see also* Riddle Decl. Ex. D. On June 29, 2018, Pena filed his civil lawsuit against USPS alleging disability, age, and racial discrimination, harassment, retaliation, and a hostile workplace.

### C. Claims

Pena asserts the following six claims, numbered one through seven and omitting a claim four. *See* FAC ¶¶ 58–100. As his first claim, Pena asserts that USPS violated the Rehabilitation Act of 1973, 29 U.S.C. § 501, based on physical disability discrimination and failure to accommodate. FAC ¶¶ 58–68. Pena alleges that he suffered from knee strain caused and "exacerbated by the wrongful conduct [of USPS]" which "result[ed] in the surgical replacement of [Pena's] left knee." *Id.* ¶ 62. Pena further contends that he "made periodic requests" for

---

[6] Per USPS records, Pena's claims were dismissed on April 2, 2018. *See* Riddle Decl. Ex. D.

accommodations in "a light duty job" prior to taking medical leave, but USPS either refused the requests or quickly revoked accommodations after allowing them for a short time. *Id.* ¶¶ 64–65, 67.

In his second claim, Pena asserts harassment by his USPS supervisors who Pena alleges, among other things, "implemented strict policies with respect to [his] job assignment . . . [that] failed to reasonably accommodate [his] handicap" and were "unduly burdensome." *Id.* ¶¶ 69–71. Pena also claims that his supervisor instructed him to undertake work in direct contradiction to his doctor's medical advice, *id.* ¶¶ 72–75, that his "request[s] to examine his personnel file" were ignored, *id.* ¶¶ 77–78, and that USPS failed to take action against the harassment despite its knowledge of it, *id.* ¶¶ 79–81.[7]

Pena asserts retaliation and failure to prevent retaliation in his third claim, based on the parties' prior EEO mediation agreement, which Pena alleges USPS "failed to fulfill its[] obligations" under. *Id.* ¶¶ 82–95. Pena further alleges that USPS personnel "intentionally and maliciously <u>removed</u> [Pena's most recent doctor's note] from [his] personnel file." *Id.* ¶ 89.[8]

In Pena's fifth claim he asserts a hostile and abusive working environment in violation of Title VII, the Rehabilitation Act, and the ADEA, because "the stated reasons for [USPS's] conduct were not the true reasons, but instead were pretext to hide the [USPS's] discriminatory animus." *Id.* ¶¶ 96–97.

Pena similarly bases his sixth claim for age discrimination in violation of the ADEA, 29 U.S.C. § 621, and his seventh claim for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.*, on the allegations that USPS's stated reasons for its conduct were pretext. *Id.* ¶¶ 98–100.

---

[7] Although Pena does not assert his harassment claim under any particular statute, the allegations contained in his second claim pertain to matters of disability discrimination prohibited under the Rehabilitation Act, as discussed further below. The Court therefore construes Pena's second claim as brought under this statute.

[8] Pena also does not assert his retaliation claim under any particular statute. However, "the standard is the same for retaliation claims under Title VII, the ADEA, and the Rehabilitation Act," which are the three statutes Pena identifies generally. *McCarthy v. Brennan*, No. 15-cv-03308-JSC, 2016 WL 946099, at *12 n.13 (N.D. Cal. Mar. 14, 2016) (collecting cases). The Court thus construes Pena's retaliation claim as brought under these three statutes and addresses it in that context below.

**D.     Motion to Dismiss**

USPS brings this motion to dismiss Pena's claims in their entirety as time-barred and insufficiently pled.  USPS argues that this Court does not have subject matter jurisdiction over Pena's claims because Pena's claims were not timely filed and therefore not exhausted.  Mot. (dkt. 21) at 7.  USPS asserts that Pena did not exhaust his administrative remedies because he failed to substantially comply with the applicable 45-day counselor contact limitations period and the 30 and 180-day notice requirements.  Mot. at 9–10; Reply (dkt. 26) at 1.  USPS further contends that Pena has failed to establish the applicability of equitable principles to save his untimely claims.  Mot. at 9–10; Reply at 2–5.  Finally, USPS argues that regardless of the Court's jurisdiction, Pena fails to state a claim under Rule 12(b)(6) of the Federal Rules of Procedure because his prior EEO settlement agreement bars his claims, Mot. at 9–10, he has not alleged he is a qualified individual, *id.* at 12, he alleges no facts to support his age and racial discrimination claims, *id.* at 13–14, and he can only bring suit against the head of USPS, not the agency itself, *id.* at 14.

In opposition, Pena contends that contact with an official other than an EEO counselor can satisfy the 45-day counselor contact requirement to exhaust his administrative remedies.  Opp'n (dkt. 23) at 11.  To rebut USPS's Rule 12(b)(6) arguments, Pena contends that he is a qualified individual based on his knee injury, *id.* at 11–12, that an accommodation was not only reasonably available, it was actually provided on limited occasions, *id.* at 12, that USPS representatives interfered with the grievance process, *id.* at 13, and that he "makes numerous and specific allegations of intolerable working conditions caused by harassment," *id.*  Pena describes his various efforts to resolve his claims in a subsequent declaration he states he filed because the attempts "have gone nowhere" and he had "no recourse but to file th[e] declaration explaining everything that happened."  Pena Decl. (dkt. 33) at 16.

## III.     ANALYSIS

### A.     Legal Standards

#### 1.   Rule 12(b)(1)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit.  *See* Fed. R. Civ. P.

12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of the Court's jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). Where a defendant brings a factual challenge, on the other hand, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242 (citation omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).

### 2. Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained: "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342. Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

**B.     Statutes Invoked in Support of Pena's Claims**

Pena asserts his claims under three statutes: Title VII, the Rehabilitation Act, and the ADEA.  USPS argues that this Court does not have subject matter jurisdiction to hear Pena's claims because Pena did not exhaust his administrative remedies when he failed to adhere to the requisite limitations periods.  The Court briefly describes the applicable statutes, exhaustion requirements, and time limits below.

**1.  Title VII**

Under Title VII of the Civil Rights Act of 1964, it is unlawful "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  The statute also prohibits employers from retaliating against an employee who opposes "an unlawful employment practice" under Title VII.  *Id.* § 2000e-3(a).  "Designed to eradicate federal employment discrimination," Congress extended these Title VII protections to federal employees in a 1972 amendment, codified at 42 U.S.C. § 2000e-16, and gave a "crucial administrative role [to] each agency together with the [EEOC]."[9]  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 831, 833 (1976).

Before a federal employee may bring a Title VII claim for discrimination or retaliation, the employee must first seek administrative relief within the agency responsible for the alleged discrimination.  *Id.* at 835.[10]  To do so, the employee must engage in "pre-complaint processing" by contacting an EEO counselor within 45 days of the alleged discrimination.  29 C.F.R. § 1614.105(a)(1).  The agency then investigates, and the claimant may later file a formal EEO complaint.  *Id.* §§ 1614.105(c), (d).  If the matter is not resolved after the agency issues its final

---

[9] In its original form, the amendment delegated full authority for administrative enforcement to the Civil Service Commission.  The EEOC assumed this responsibility six years later and retains it today.

[10] In holding that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment," *Brown*, 425 U.S. at 835, the Supreme Court distinguished its earlier decision in *Johnson v. Railway Express Agency*, 421 U.S. 454 (1975), where it relied on explicit legislative history to find that *private* employees are "not limited to Title VII" relief.  42 U.S. at 459.  Thus, in contrast to federal employees who must first exhaust their administrative remedies under Title VII, private employees have "co-extensive" rights to sue for employment discrimination under other applicable statutes.  *Id.*

decision, the employee may either: (1) file directly in federal court within 90 days, *id.* § 1614.407(a), or (2) appeal through the EEOC within 30 days, *id.* §§ 1614.401(a), 1614.402(a). An employee who elects to pursue further administrative relief is not later precluded from filing in federal court at the conclusion of the EEOC proceedings. *Id.* § 1614.407(c); 42 U.S.C. § 2000e-16(c).  If, at any time, the employee's complaint sits idle within the administrative process for more than 180 days, the employee has an immediate right to file a civil action in federal court. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.407(b), (d).  While an employee's "substantial compliance" with the administrative complaint process is a requirement for exhaustion that precludes district court jurisdiction, *see Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001), the regulations make clear that "the time limits in this part are subject to waiver, estoppel and equitable tolling," 29 C.F.R. § 1614.604(c).  This dual remedial scheme, accompanied by the comprehensive EEOC issued regulations, "provides for a careful blend of administrative and judicial enforcement powers." *Brown*, 425 U.S. at 833.

### 2. The Rehabilitation Act

Both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act prohibit discrimination against an otherwise qualified individual based on his or her disability.  *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004).  The Rehabilitation Act is the precursor to the ADA and applies to federal employees.  *See Daniels v. Chertoff*, No. 06-cv-2891-PHX-JAT, 2007 WL 1140401, at *2 (D. Ariz. Apr. 17, 2007) (citing 42 U.S.C. § 12111(5)(B)(i) and *Calero-Cerezo*, 355 F.3d at 11 n.1).  Thus, the ADA's "standards of substantive liability are incorporated in the Rehabilitation Act," *Walton v. U.S. Marshals Serv.*, 492 F.3d 998, 1005 (9th Cir. 2007), and in addition, courts "generally use Title VII precedent to interpret ADA claims." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 859 (9th Cir. 2016) (collecting cases).  Claims for "[b]oth disparate treatment of a disabled person and refusal to make a reasonable accommodation for a disabled person are actionable under the Rehabilitation Act ." *Gaytan v. Solis*, No. 07-cv-6367 SBA, 2012 WL 2367822, at *3 (N.D. Cal. June 21, 2012) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002)).  Claimants alleging employment discrimination under the Rehabilitation Act are subject to the same administrative exhaustion requirements as

those applicable in the Title VII remedial scheme. *See Vinieratos v. U.S. Dep't of Air Force ex rel. Aldridge*, 939 F.2d 762, 773 (9th Cir. 1991).

### 3. The ADEA

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623. While the term "employer" excludes the United States, *see id.* § 630(b), the ADEA also contains a "federal sector provision" which provides that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." *Gomez-Perez v. Potter*, 553 U.S. 474, 479 (2008) (citing 29 U.S.C. § 633a(a)). The federal sector provision also protects federal employees from "retaliation for complaining about age discrimination." *Id.* at 488.

However, unlike for Title VII and Rehabilitation Act discrimination claims, federal employees with ADEA claims are not required to exhaust administrative remedies prior to filing in federal court. *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5–7 (1991). Under the ADEA, a federal employee has the choice of either pursuing an age discrimination claim through the Title VII and Rehabilitation Act administrative process, 29 C.F.R. § 1614.103(a), or by "presenting the merits of [the ADEA] claim to a federal court in the first instance," *Stevens*, 500 U.S. at 7. *See* 29 U.S.C. § 633a(c). A federal employee who wishes to file directly in federal court must: (1) give notice to the EEOC of the intent to sue within 180 days of the alleged discrimination, and (2) wait at least 30 days after giving notice to file the civil claim. 29 C.F.R. § 633a(d); *Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003). Accordingly, although the ADEA allows federal employees an option to bypass administrative proceedings, either avenue requires compliance with certain time limitations. As with Title VII and Rehabilitation Act administrative claims however, these limitations periods "may be forfeited, waived, or equitably modified." *Forester v. Chertoff*, 500 F.3d 920, 929 (9th Cir. 2007).

**C.    The Court Has Subject Matter Jurisdiction Under Rule 12(b)(1)**

Title VII and the Rehabilitation Act require a federal employee to exhaust administrative remedies prior to seeking relief in federal court.  42 U.S.C. § 2000e-16(c); *Brown*, 425 U.S. at 835.  Accordingly, Ninth Circuit case law holds that a district court has jurisdiction over a federal employee's discrimination claims only if the employee has demonstrated "substantial compliance" with the requirement to first pursue the claims through the administrative process.  *Sommatino*, 255 F.3d at 708.  USPS contends that Pena failed to exhaust his claims because he did not substantially comply with the requisite administrative time limits.  Mot. at 9–10.  As discussed below, this argument misconstrues the exhaustion requirement because timeliness within the EEO process is not a jurisdictional prerequisite to filing in federal court.  *See Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1043 (9th Cir. 2009); *see also Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (reaching the same conclusion as to untimely charges filed with the EEOC).  The question of jurisdiction turns instead on whether an employee submitted administrative claims which are "like or reasonably related to" those contained in the federal complaint, *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990), and Pena did so here.

**1.    Timeliness of Exhaustion Is Not a Jurisdictional Requirement**

USPS argues that this Court does not have jurisdiction over Pena's claims because he exceeded the prescribed 45-day administrative deadline to contact an EEO counselor, and also failed to comply with the 180-day and 30-day ADEA notice requirements.  This argument is incorrect on two grounds.  First, the 45-day EEO counselor contact requirement is an administrative regulation under 29 C.F.R. § 1614.105(a)(1); it "does not carry the full weight of statutory authority and is not a jurisdictional prerequisite for suit in federal court."  *Kraus*, 572 F.3d at 1043.  As the Ninth Circuit acknowledged in *Vinieratos*:

> There is a subtle distinction here worthy of note. We do not recognize administrative exhaustion under Title VII as a *jurisdictional requirement* per se; we treat it as a legal question under the de novo standard because the issue is whether the plaintiff has satisfied a *statutory precondition* to suit.

938 F.3d at 768 n.5.  Accordingly, the 45-day requirement is best considered under a Rule 12(b)(6) analysis as a condition precedent to suit, which—like a statute of limitations—is "subject

1   to waiver, estoppel, and equitable tolling" or "fatal to a federal employee's discrimination claim in

2   federal court." *Kraus*, 572 F.3d at 1043 (citations omitted); *see also* 29 C.F.R. § 1614.604(c).

3   Second, only Pena's Title VII and Rehabilitation Act administrative claims required

4   exhaustion. It was not mandatory for Pena was to exhaust administrative remedies for his ADEA

5   claim because the "ADEA[] contains no express requirement that a federal employee complainant

6   seek administrative relief." *Stevens*, 500 U.S. at 12 (Stevens, J., concurring in part and dissenting

7   in part). Pena had the choice of either invoking the administrative process or filing directly in

8   federal court under the ADEA's alternative notice provisions. *Id.* at 7 (majority opinion). Both

9   avenues are subject to independent limitations periods—either 45 days (if a plaintiff pursues the

10  EEO process) or 30 and 180 days (if a plaintiff elects to bypass that process by giving notice of

11  intent to sue)—but neither preclude the Court's jurisdiction for lack of administrative

12  exhaustion.[11]

### 2. Pena Substantially Complied with His Duty to Exhaust

14  Although timeliness of exhaustion is not jurisdictional, the Ninth Circuit has held "that

15  substantial compliance with the presentment of discrimination complaints to an appropriate

16  administrative agency *is* a jurisdictional prerequisite" for federal employees. *Sommatino*, 255

17  F.3d at 708. Thus, "[e]xhaustion depends upon the 'fit' between the administrative claim, the

18  investigation and any subsequent allegations." *Greenlaw v. Garrett*, 59 F.3d 994, 1000 (9th Cir.

19  1995). To surpass the jurisdictional bar of Rule 12(b)(1), Pena must prove that he exhausted his

20  Title VII and Rehabilitation Act administrative claims by showing "substantial compliance" with

21  the requirement that he present his claims to the agency EEO, prior to filing in federal court. *See,*

22  *e.g.*, *id.* (reversing the district court's dismissal as to claims that were "related to the [employee's]

23  EEO Complaint"). The Court must therefore compare the factual allegations contained in Pena's

24  federal complaint to those he initially made to the EEO.

27  [11] Separate and apart from the time restrictions in which to contact or notify the EEO or EEOC at
    issue in this case, there are additional limitations which prescribe the varying lengths of time a
28  claimant may wait before suing in federal court that are not relevant to the outcome of the present
    motion. *See* 42 U.S.C. § 2000e-16(c).

1    The Ninth Circuit has held, in the similar context of where a court is called to consider a

2    plaintiff's EEOC charge with respect to a subsequent federal complaint, that "[t]he jurisdictional

3    scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation."

4    *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003) (citations omitted). "The same is true of a

5    complaint of discrimination submitted to a federal agency's EEO office." *Shelley v. Geren*, 666

6    F.3d 599, 606 (9th Cir. 2012) (citations omitted). A federal employee has exhausted—and the

7    district court has jurisdiction over—"any charges of discrimination that are 'like or reasonably

8    related to' the allegations made before the EEOC, as well as charges that are within the scope of

9    an EEOC investigation that reasonably could be expected to grow out of the allegations." *Leong*,

10   347 F.3d at 1122 (quoting *Sosa*, 920 F.2d at 1456). An employee's civil discrimination claims

11   may be considered "reasonably related" to prior EEOC allegations when the "claims are consistent

12   with the plaintiff's original theory of the case." *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100

13   (9th Cir. 2002).

14   In addition, courts must construe EEOC charges "with utmost liberality since they are

15   made by those unschooled in the technicalities of formal pleading." *Sosa*, 920 F.2d at 1458

16   (citation omitted). The Ninth Circuit has therefore held that the factual statement contained within

17   the administrative record is "the crucial element" in this determination and has set forth the

18   following factors for deciding whether a plaintiff has exhausted his claims: "the alleged basis of

19   the discrimination, dates of discriminatory acts specified within the charge, perpetrators of

20   discrimination named in the charge, and any locations at which discrimination is alleged to have

21   occurred." *B.K.B.*, 276 F.3d at 1100 (citation omitted). The Court applies these same standards

22   for exhaustion to Pena's EEO complaint.

23   Pena filed his formal EEO complaint on March 12, 2018, and checked the boxes to allege

24   disability, age, race, and national origin discrimination. FAC Ex. G. Approximately three weeks

25   later, around April 5, 2018, he received the agency's final decision. *Id.* ¶ 16. In lieu of appealing

26   to the EEOC, Pena filed this federal action on June 29, 2018. Although Pena did not provide the

27   attached explanation of his EEO claims, it is clear from his December 7, 2017 letter to the EEO

28   that the factual narrative contained in his recent administrative complaint is "like or reasonably

14

related to" the allegations he made in his federal complaint. *See id.* Ex. A. Pena alleges in both complaints that he was injured at work because his supervisors failed to comply with his medical directive, that his doctor's note was removed from his file, and that his supervisors harassed and threatened him. *Id.*; *see generally* FAC. The Court finds these facts are based on the same theory of wrongdoing as is currently alleged in Pena's federal complaint. Therefore, the Court holds that Pena has made no new allegations outside the scope of this Court's jurisdiction. The Court has subject matter jurisdiction to consider all of Pena's claims and rejects USPS's argument to the contrary.

### D. Pena's Claims Are Dismissed as Untimely Under Rule 12(b)(6)

#### 1. The Administrative 45-Day Counselor Contact Requirement

To begin the required administrative process for claims under Title VII and the Rehabilitation Act, a federal employee must initiate contact with an EEO counselor within 45 days of the date of the alleged discriminatory matter. 29 C.F.R. § 1614.105(a)(1); *Green v. Brennan*, 136 S. Ct. 1769, 1775 (2016). "The limitations-period analysis is always conducted claim by claim," and "begins running on any separate underlying claim of discrimination when that claim accrues." *Green*, 136 S. Ct. at 1782; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–15 (2002) ("Each discriminatory act starts a new clock for filing charges alleging that act."). A federal employee who fails to contact an EEO counselor for pre-complaint processing risks dismissal of any subsequent complaint. *Kraus*, 572 F.3d at 1043; *Lacayo v. Donahoe*, No. 14-cv-04077-JSC, 2015 WL 993448, at *8 (N.D. Cal. Mar. 4, 2015) ("[A]n employee's failure to follow to a tee the 45-day timing requirements is a shortcoming that relates to the substantive adequacy of a plaintiff's complaint . . . ." (internal brackets and quotation marks omitted)); *see, e.g.*, *Johnson v. U.S. Treasury Dep't*, 27 F.3d 415, 416 (9th Cir. 1994) (affirming "the judgment against Johnson because his complaint to the EEO counselor was untimely").[12]

---

[12] Note that the limitations period to contact an EEO counselor was previously only 30 days rather than 45. *See, e.g.*, *Johnson*, 27 F.3d 415 (9th Cir. 1994); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410 (9th Cir. 1985).

United States District Court
Northern District of California

Pena's first, second, third, fifth, and seventh claims assert violations under Title VII and the Rehabilitation Act. These disability and race discrimination claims are thus subject to the administrative 45-day limitations period in which the employee must contact an EEO counselor. Pena notified the EEO about his claims on November 29, 2017. FAC ¶ 13. He must therefore show that his claims accrued on or after October 15, 2017 (the date 45 days prior). *See, e.g.*, *Johnson v. Henderson*, 314 F.3d 409, 415 (9th Cir. 2002) (finding the plaintiff's request untimely because she was required to seek counseling no later than November 26, 1999 for alleged harassment that took place on October 12 of the same year). The Court finds that Pena has failed to meet this requirement. The accrual clock on a disability claim is triggered when an employee takes medical leave because of alleged discriminatory conduct by his employer. *See, e.g.*, *Green*, 136 S. Ct. at 1782 (holding that the 45-day limitations period begins in a constructive discharge claim when an employee resigns). Pena "embark[ed] [on] medical leave" and began receiving disability payments in October 2014—three years prior to contacting the EEO about his claims. FAC ¶ 52. Because he failed to contact an EEO counselor within the required 45-day limit, Pena's administrative Title VII and Rehabilitation Act claims are untimely.[13]

Pena makes only cursory attempts to rebut this conclusion. He first comments that the 45-day requirement may be satisfied through contact with "an[] agency official logically connected with the EEOC process" other than an EEO counselor. *See* Opp'n at 11, 13 (quoting EEOC Management Directive 110, at ch. 2, § I.A n.1, 1999 WL 33318588 (Nov. 9, 1999); *see also Kraus*, 572 F.3d at 1044–45. It is true that courts have interpreted the 45-day counselor requirement as to include contact with other EEO personnel, such as those in the position of "Officer," "Specialist," or "Director." *Kraus*, 572 F.3d at 1044. Even contact made to non-EEO personnel such as the Regional Director[14] of an agency's Office of Civil Rights may satisfy the

---

[13] Pena alleges that USPS "*still* refuses to make reasonable accommodations for [his] disability," FAC ¶ 67 (emphasis added), but it is unclear what accommodation would reasonably facilitate Pena while out on medical leave, and Pena alleges none. The date Pena left work on medical leave therefore remains the last qualifying act to renew the 45-day limitations period.

[14] Although Pena refers to speaking to a "Regional Director" in September 20, 2017, *see* Pena Decl. at 15, that individual appears to be affiliated with the union, not with the EEO office of USPS.

16

45-day requirement if the contacted person is in fact "logically connected to the EEO process" within the agency. *Id.* at 1045 (citing *Duke v. Slater*, EEOC Decision No. 01A02129, 2000 WL 732027, at *1 (May 22, 2000)). For example, the Ninth Circuit reversed the lower court's dismissal in *Kraus* because it was clear from the record that the contacted officer, although not a counselor, still "facilitate[d] contact between the [agency]'s employees and EEO counselors and advise[d] employees about the EEO complaint process." *Kraus*, 572 F.3d at 1046. However, this exception requires the employee to "exhibit an intent to begin the EEO process" when initiating contact with the logically connected substitute. Management Directive 110, at ch. 2, § I.A n.1; *see also Kraus*, 572 F.3d at 1046 (remanding for the lower court to consider the question of exhibited intent).

Pena does not allege that he spoke to any logically connected person within the required 45 days or explain why the person, if there were one, would be an appropriate substitute for an EEO counselor. Moreover, Pena makes no allegation exhibiting a desire to initiate the EEO process, or contact an individual for that purpose, prior to when he did so on November 29, 2017. Rather than pursue the administrative process as required, Pena chose to seek out his union representatives after taking medical leave. FAC ¶ 55–57. "Yet, utilizing the union grievance process is not the same thing as contacting an EEO counselor." *Huynh v. U.S. Postal Serv.*, No. 11-cv-03195 NC, 2013 WL 2048681, at *5 (N.D. Cal. May 14, 2013) (citing *Vinieratos*, 938 F.3d at 768 (discussing a federal employee's "irrevocable" choice to pursue an employment discrimination claim under either a statutory procedure which requires the preliminary EEO counselor consultation, or a union grievance procedure, but not both)). "Nor does it toll the statute of limitations." *Id.* at *5 (citing *Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 240 (1976)). Thus, regardless of the merits of his claims, Pena failed to present them to an EEO counselor (or equivalent) for three years, by which time his claims had expired.

## 2. Principles of Equity Do Not Excuse Pena's Untimely Claims

The administrative requirement to alert an EEO counselor is regarded as a statute of limitations that is "subject to waiver, estoppel and equitable tolling."[15] 29 C.F.R. § 1614.604(c); *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985). The 45-day limitations period may therefore be extended "when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2). But although courts may excuse untimely employment discrimination charges, the Supreme Court has noted that it should be done only "sparingly," because "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Morgan*, 536 U.S. at 113 (citing *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (*per curiam*)).

### a. Equitable Tolling

Pena's previous EEO involvement suggests a finding of equitable tolling is unwarranted to save his untimely claims. Tolling "applie[s] to excuse a claimant's failure to comply with the time limitations where []he had neither actual nor constructive notice of the filing period." *Henderson*, 314 F.3d at 414 (quoting *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997)). The focus of the doctrine is "on a plaintiff's excusable ignorance and lack of prejudice to the defendant." *Leong*, 347 F.3d at 1123. Here, Pena was not only familiar with the EEO process because of his prior EEO mediation, *see* FAC ¶ 34, he was also well aware of his claims. Pena

---

[15] Nothing in the record indicates a waiver of the 45-day limitations period by USPS, including the EEO's processing and eventual dismissal of Pena's untimely complaint. "The mere receipt and investigation of a complaint does not waive objection to a complainant's failure to comply with the original filling time limit when the later investigation does not result in an administrative finding of discrimination." *Boyd*, 752 F.2d at 414. The Court's discussion therefore centers on the doctrines of equitable tolling and estoppel.

requested disability accommodation as early as 2011, *id.* ¶ 25, and reported to his doctor in 2013 that "Lopez had been forcing him, through intimidation and other tactics to perform tasks." *Id.* ¶ 43; *see also id.* ¶ 38 ("On February 13, 2013, [Pena] was interviewed by an employee from human resources regarding [his] charge of harassment and discriminatory practices."). There is no evidence to show that Pena's Title VII and Rehabilitation Act administrative claims should be tolled because he lacked knowledge as to his claims or the 45-day limitations period. In addition, many years have passed since the alleged violations occurred and it would prejudice USPS to be forced to defend against them now.

### b. Equitable Estoppel

Pena's argument that his untimely filing should be excused under equitable estoppel fares no better. Equitable estoppel primarily relates to a defendant's actions that prevented the plaintiff from making a timely filing, "above and beyond" the wrongdoing alleged in the suit. *Henderson*, 314 F.3d at 414. Courts may consider, among other factors, whether the plaintiff relied on the defendant, evidence of deceit by the defendant, and "the extent to which the purposes of the limitations period have been satisfied."[16] *Id.* (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194–96 (9th Cir. 2001) (en banc)). "Equitable estoppel in the limitations setting is sometimes called fraudulent concealment . . . [and] may apply against an employer when the employer misrepresents or conceals facts necessary to support a discrimination charge." *Santa Maria*, 202 F.3d at 1176–77 (internal citation and quotation marks omitted). Pena alleges no such conduct.

Pena argues he is entitled to equitable estoppel because he "alleges ongoing interference with the grievance process by [USPS] representatives" that "cause[d] . . . his inability to timely contact an EEOC [sic] counselor." Opp'n at 13. The Court disagrees. Pena contends, without any factual allegations, that "[f]rom 2014 to 2017, [he] made multiple unsuccessful attempts in

---

[16] Title VII "time limitation[s] [are] meant to encourage a potential charging party to raise a discrimination claim before it gets stale." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 107, (2002); *see also Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980) ("By choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination.").

advancing [his] charges . . . through the appropriate administrative channels . . . [but his] efforts were consistently frustrated through intentional acts of representatives of [USPS] and [his union]." FAC ¶ 53. However, the Court can find no instances of interference by USPS representatives after October 2014 in the record. In fact, the Court can find only one interaction between Pena and a USPS employee during the entire three-year period after he went on medical leave. Pena alleges that "[i]n March 2015, [he] contacted Postmaster Latenya Desgraffenreev for a copy of his personnel file" but "[d]espite multiple follow-up requests and further assurances, [he] has of yet to receive his file." Id. ¶ 54. Not only is this March date itself months beyond the 45-day limitations period, but Pena also fails to explain why not receiving a copy of his file prevented his timely contact with an EEO Counselor.[17]

It appears that the sum of Pena's interactions in the years before filing this federal lawsuit occurred with his union. See, e.g., id. ¶¶ 55–57 (alleging contacts made to his branch and national union presidents). Pena specifically laments his union branch president's failure to provide him with "statements relating to threats made to [him] by union shop stewards," id. ¶ 55, and his subsequent failed attempt to bring a case with the National Labor Relations Board against his union branch. Id. ¶ 57. Yet Pena's reliance on these contacts is unavailing because both unsuccessful interactions involved his union, and there is no reason provided to attribute any failure by Pena's union to his employer, USPS. Pena's union is not a party to this action and thus his various communications with union representatives, even if frustrated, have no bearing on his present claims or the validity of an equitable estoppel argument. Equitable estoppel is unwarranted. Finding no equitable reason to excuse the untimeliness of Pena's claims subject to the 45-day limitations period, the Court holds Pena's Title VII and Rehabilitation Act administrative claims time-barred.

### 3. The ADEA's 180-Day Notification Requirement

Pena asserts his fifth and sixth claims under the ADEA. A federal employee seeking redress for a violation of the ADEA has two alternative routes he can pursue. The employee: (1)

---

[17] Notably, Pena acknowledges that he had previously requested and received his personnel file on September 14, 2012 as well as sometime in early 2014. Pena Decl. at 8, 10.

"may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies," or, (2) he can forgo the administrative process and "decide to present the merits of his claim to a federal district court in the first instance." *Stevens*, 500 U.S. at 5–6. An employee who elects the latter option must notify the EEOC of the employee's intent to suit within 180 days of the alleged discrimination and then wait at least 30 days before filing in federal court. *See* 29 U.S.C. § 633a(d). Failure to comply with the appropriate limitations periods creates an untimely complaint that is subject to dismissal. *See, e.g.*, *Whitman v. Mineta*, 541 F.3d 929, 932–33 (2008). Because, however, "the time prescriptions in 29 U.S.C. § 633a, including the 30-day waiting period, are not jurisdictional," the limits "may be forfeited, waived, or equitably modified." *Forester*, 500 F.3d at 929.

Pena did not pursue his claims through the administrative process after the EEO dismissed his complaint. Instead, on June 29, 2018, Pena filed the civil action before this Court.[18] However, to successfully bypass the administrative process under the ADEA, Pena was required to notify the EEOC within 180 days of the alleged discriminatory acts. As discussed above, Pena's claims began to accrue no later than October 2014 when he left work on medical leave. Therefore, to be timely under this alternative track, Pena was required to notify the EEOC of his intent to bring federal ADEA claims by approximately March 2015. Nothing in the record suggests that he did so.

Because Pena failed to meet the ADEA's 180-day notification requirement and, for substantially the same reasons as previously stated, there is no equitable reason for the limitations period not to be enforced, Pena may not bypass the administrative process by filing directly in federal court. Because Pena also failed to meet the EEOC's 45-day counselor contact requirement, the administrative route for his ADEA claims is similarly foreclosed. Accordingly, Pena's ADEA claims for age discrimination are also time-barred.

---

[18] A federal employee who elects to pursue administrative relief for an ADEA claim, and then later abandons that process, is not barred from bringing that ADEA claim in federal district court. *See Bankston*, 345 F.3d at 775 (citing *Bak v. Postal Serv.*, 52 F.3d 241 (9th Cir. 1995)); *cf. Sommatino*, 255 F.3d at 708 ("[A]bandonment or failure to cooperate in the administrative process prevents exhaustion and precludes judicial review [of Title VII claims.]").

All of Pena's claims are untimely and he has not shown that waiver, tolling, or estoppel should apply to save them. The Court therefore dismisses Pena's claims under Rule 12(b)(6), with leave to amend if Pena is aware of additional facts that would warrant excusing his delay.

## IV.    CONCLUSION

For the reasons discussed above, USPS's motion to dismiss is GRANTED and Pena's First Amended Complaint is DISMISSED with leave to amend. If Pena is aware of additional facts he could allege to cure the defects described herein, he may file a second amended complaint no later than March 18, 2019.

Pena, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center in either of the Oakland or San Francisco federal courthouses for assistance. The San Francisco Legal Help Center office is located in Room 2796 on the 15th floor at 450 Golden Gate Avenue, San Francisco, CA 94102. The Oakland office is located in Room 470-S on the 4th floor at 1301 Clay Street, Oakland, CA 94612. Appointments can be made by calling (415) 782-8982, signing up in the appointment book located outside either office, or emailing federalprobonoproject@sfbar.org. Telephone appointments are available. Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated: February 14, 2019

JOSEPH C. SPERO
Chief Magistrate Judge