UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISRAEL PENA,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, et al.,<br><br>    Defendants. | Case No. 18-cv-03923-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 42 |

## I. INTRODUCTION

Plaintiff Israel Pena, pro se, asserts that Defendants the United States Postal Service and Postmaster Megan J. Brennan (collectively, "USPS") discriminated against him based on race, disability, and age. The Court previously dismissed Pena's first amended complaint for failure to meet deadlines for filing his administrative and judicial claims. USPS moves once again to dismiss Pena's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court found the matter suitable for resolution without oral argument and vacated the hearing on USPS's motion. *See* Clerk's Notice (dkt. 45). For the reasons discussed below, USPS's motion is GRANTED, and this action is DISMISSED WITH PREJUDICE.[1]

## II. BACKGROUND

### A. Procedural History, First Amended Complaint, and Previous Order

Pena's first amended complaint asserted six claims under the Rehabilitation Act, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act ("ADEA"). *See* Order Granting Def.'s Mot. to Dismiss Pl.'s 1st Am. Compl. ("Order re MTD FAC," dkt. 38) at 4–

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

5 (summarizing Pena's first amended complaint ("FAC," dkt. 7)).[2]  Pena, a sixty-year-old Hispanic man and longtime USPS letter carrier, alleged that he had surgery for a knee injury in 2010 and resumed normal work in January of 2011. *Id.* at 1–2.  In March of 2011, he had a dispute with a supervisor about whether he could take on a new route that required more walking, and was allowed to remain on his existing route after he obtained a doctor's note.[3]  *Id.* at 2.  In early 2012, a new supervisor required Pena to take on a route incompatible with his medical restrictions, resulting in further injuries to Pena's knee in March of 2012.  *Id.*  Pena was assigned office duties in lieu of his usual route into April of 2012, and requested mediation from the USPS Equal Employment Opportunity ("EEO") office, which resulted in Pena and his supervisors signing an EEO mediation agreement to place Pena on "modified work activity" until May 15, 2012.  *Id.* at 2–3.  Pena experienced "additional acts of discrimination and harassment" in June, and in October of 2012 received a new doctor's note restricting his work activities.  *Id.* at 3.  Pena was required to perform work in excess of those restrictions through 2013 and had his vehicle vandalized in what he suggests was an act of retaliation.  *Id.*  The alleged discrimination and retaliation continued until Pena began medical leave in October of 2014, at which time he received 75% of his regular wages as disability pay.  *Id.* at 3–4.

Pena may have contacted either the USPS EEO office or the Equal Opportunity Employment Commission ("EEOC") on November 29, 2017,[4] and he filed a formal administrative

---

[2] *Pena v. U.S. Postal Serv.*, No. 18-cv-03923-JCS, 2019 WL 634645 (N.D. Cal. Feb. 14, 2019). Citations herein to the Court's previous order refer to page numbers of the version filed in the Court's ECF docket.

[3] For ease of reading, and because a plaintiff's allegations are generally taken as true in the context of a motion to dismiss under Rule 12(b)(6), some of Pena's allegations are summarized in this order as if true.  Nothing in this order should be construed as resolving any issue of fact that might be disputed if the case were to proceed beyond the pleading stage.

[4] Paragraph 13 of the first amended complaint reads as follows: "On or about November 29, 2017 Plaintiff contacted the Postal Service Equal Opportunity Office ('EEOC') thereby initiating contact with a counselor pursuant to 29 CFR §1614.105(a)(2) through written letter charging Defendant with unlawful discriminatory employment practices based on disability, national origin, and race/color."  FAC ¶ 13.  The Court understood that allegation as referring to contact with the USPS EEO office, but Pena states in his response to the Court's previous order that the Court was mistaken.  *See* Pl.'s Answer to Order (dkt. 39) at 2 ( "The statement 'Pena notified the EEO about his claims on November 29, 2017' is untrue.  That is when I ordered paperwork for my EEOC [sic], which I received in December 2017 and which I filled out and returned to Florida at the EEO Office . . . .").

2

complaint in March of 2018 after receiving notice of his right to do so in February. *See id.* at 4; FAC ¶ 13. USPS reached a final decision in early April of 2018 dismissing Pena's administrative complaint and granting him a right to sue in court or appeal to the EEOC. Order re MTD FAC at 4. Among the reasons for USPS's decision was Pena's years-long delay in initiating EEO contact. *See* Riddle Decl. Ex. A at 3–4.[5] Pena filed this action on June 29, 2018. *See generally* Compl. (dkt. 1).

Pena filed his first amended complaint on August 6, 2018, before USPS answered or otherwise appeared in this action. *See generally* FAC. USPS moved to dismiss the first amended complaint. The Court dismissed Pena's Title VII and Rehabilitation Act claims for failure to contact an EEO counselor or similar officer within forty-five days of the conduct giving rise to his claims, and dismissed his ADEA claims for failure either to pursue administrative relief through the EEOC or to notify the EEOC of his intent to sue within 180 days of the conduct at issue. Order re MTD FAC at 15–21. The Court granted Pena leave to file a second amended complaint if he was aware of additional facts he could allege to cure those defects, such as facts supporting an equitable tolling doctrine. *See id.*

### B. Pena's Response to the Court's Order

On March 15, 2019, Pena filed a document captioned as "Plaintiff's Answer to Order Granting Defendant's Motion[ ]to Dismiss Plaintiff's First Amended Complaint," which the Court construes as the second amended complaint authorized by the previous order.[6] *See* Pl.'s Answer to Order ("SAC," dkt. 39). In that document, Pena asserts that he "did not know there was a 45 day window in which to file [his] claim" and that he "made every effort to get someone who could help . . . immediately after [his] injury [on] March 15, 2012." *Id.* at 1. The allegations of Pena's

---

[5] The Court takes judicial notice of the EEO decision as incorporated by reference by Pena's complaint.

[6] The Court's previous order authorized Pena to file a second amended complaint, not any other form of response. If the response were construed strictly as a new complaint, it would not incorporate any of the substance of the first amended complaint, because an amended complaint generally supersedes an earlier complaint in its entirety. That alone would likely be grounds for dismissal, albeit with further leave to amend if it appeared that combining the substance of the two filings would be sufficient to state a claim. As discussed below, however, dismissal with prejudice is warranted because even reading the two filings together, Pena has not cured or shown that he could cure the defects in timeliness identified in the previous order.

3

response are as follows.

Pena asked the president of his union branch to conduct an investigation in April of 2012, but that she did not do so because she said "management was going to lie." *Id.* Not knowing what else to do, Pena "filed for an EEO (Equal Employment Opportunity) that took place on May 4, 2012." *Id.* He was late for that meeting because of "delaying tactics that Anna Carmelita, the Postmaster, used to prevent [him] from meeting with the EEO officials on time,"—specifically, "work orders" that Carmelita gave him—but not so late that he missed the meeting. *Id.* at 1–2. At the meeting with the EEO office, Carmelita was ordered to sit down with Pena and the shop steward on July 1, 2012 to "fix the numbers" for Pena's delivery route, but she did not do so. *Id.* at 2. Pena was on vacation for much of July and called an EEO officer, Trent Andrews, when he returned in early August to report that Carmelita failed to meet with him. *Id.* After Andrews did not return Pena's initial call, Pena called again and Andrews told him he would speak to Carmelita and respond to Pena the following week. *Id.* "To this day, Mr. Andrews never called [Pena] back and also, to this day, the EEO office has not contacted [Pena] or written with an answer to [his] EEO [complaint]." *Id.*

In March of 2015, Pena requested a copy of his employment filed from Postmaster LaTenya Desgraffenteev, who initially said that she would make copies within seventy-two hours, but later said she did not have time to do so and asked Pena to meet her on March 30, 2015. *Id.* at 4. When Pena did so, Desgraffenteev told him that she had found time to make the copies and had mailed them to him, but Pena never received those copies. *Id.* More than a year later, in August of 2016, Pena gave a different postmaster, Ted Viray, a written request for a copy of his file, but he still has not received the file. *Id.*

Pena met with union branch president Lili Beaumont in September of 2016 and "asked her to give [him] all [his] statements for [his] EEO," but Beaumont never did so, which led Pena to believe that Beaumont was "not working on behalf of the members, but with management." *Id.* at 3. Pena filed a complaint with the National Labor Relations Board ("NLRB") in March of 2017 but the NLRB ultimately told Pena it was closing the case because the union did not have documentation to support Pena's allegations. *Id.*

4

November 29, 2017 was not the date that Pena informed the EEO of his claims, but rather the date that he requested relevant paperwork. *Id.* at 2. Pena received the paperwork in December of 2017 and submitted it, along with a statement describing his ordeal, to the EEO office in Florida. *Id.* Pena's EEO complaint was accepted in January of 2018 "and the EEO [sic, presumably referring to a mediation or some other conference] was supposed to take place on February 26, 2018," but did not take place because a representative of the EEO office told Pena that he could not call in retired employees or non-management employees named in Pena's complaint. *Id.* at 3. The EEO representative told Pena that he could give him paperwork to file this action and Pena could then subpoena the relevant employees. *Id.* On April 2, 2018, Pena was granted the right to file this action, and he did so within ninety days. *Id.*

In closing, Pena asserts that he has "had two federal investigations by the Post Office and the results were that [he] was threatened," as shown in exhibits to his response. *Id.* at 5.

The first exhibit is a December 2017 email from an EEO representative providing Pena with the representative's contact information and "[s]ome information on the EEO process." *Id.* Ex. A. Included in the same exhibit as that email is a March 20, 2018 report by the EEO representative indicating that Pena complained of discrimination in the form of medical documents having been removed from his file, one of Pena's supervisors denied the allegation and said that a March 2014 investigation had cleared him of wrongdoing, and other individuals identified by Pena could not be contacted because they had retired or did not hold managerial roles. *Id.*

The second exhibit is a March 2017 letter from an NLRB official indicating that the NLRB had docketed a charge filed by Pena, as well as a copy of Pena's charge asserting wrongdoing by his union and then-Branch President Lili Beaumont. *Id.* Ex. B. The third exhibit consists of copies of Pena's March 2015 and August 2016 letters to postmasters Degraffenreed[7] and Viray. *Id.* Ex. C. The fourth exhibit is a claim form for state disability benefits. *Id.* Ex. D. The fifth is a September 2012 letter that Pena sent to postmaster Anna Carmelita requesting his personnel file,

---

[7] This name is spelled differently in the body of Pena's response to the Court's order. There is no basis in the record to determine which spelling is correct, but the discrepancy is not material to the outcome of the present motion.

5

signed by both Carmelita and Pena. *Id.* Ex. E. The sixth exhibit, Exhibit F, includes an April 2012 letter to Carmelita requesting Pena's personnel file and notes dated March of 2019. *Id.* Ex. F. There is no Exhibit G.

The next exhibit begins with a USPS "Initial Management Inquiry Report" dated May 20, 2014, describing investigations of Pena's allegations of failure to accommodate his disability, removal of a document from his personnel file, and his supervisors and coworkers engaging in workplace sexual affairs. *Id.* Ex. H. The investigator found no evidence to support most of Pena's claims, noted that two of his coworkers accused Pena of inappropriate conduct, and recommended that all involved be reminded of relevant policies and offered counseling. *Id.* This exhibit also includes other investigatory documents from 2013 and 2014 indicating similar conclusions. *See id.*

There is no Exhibit I. Exhibit J is an April 28, 2017 letter from Postmaster Viray to Pena stating that USPS determined Pena was eligible for a limited duty assignment and should report for that assignment on May 15, 2017. *Id.* Ex. J. The next exhibit is a May 2012 letter from one of Pena's coworkers stating that supervisor Werner Lopez was dismissive of a doctor's note limiting the duties she could perform. *Id.* Ex. K. Exhibit L is a letter from Pena addressed to the Court dated March 13, 2019 describing difficulties that Pena had with an attorney, as well as many of his experiences at USPS, without specifying when much of the conduct at issue occurred but noting certain incidents in 1997, 2010, 2014, 2017, and 2018. *Id.* Ex. L. Exhibit M is another copy of the 2012 letter from a coworker included as Exhibit K, as well as a letter that Pena apparently sent to a different coworker's in-laws accusing his coworker of having multiple workplace affairs. *Id.* Ex. M.

### C. Arguments on USPS's Present Motion to Dismiss

USPS moves once again to dismiss, contending—among other arguments—that Pena has not cured the untimeliness for which the Court previously dismissed his complaint. *See generally* Mot. (dkt. 38). Pena argues that he was not aware of the forty-five day deadline for contacting the EEO, in part because the EEO officer he spoke to in August of 2012 never called him back, and

that USPS's briefs in this action have been inconsistent in referencing a thirty-day deadline[8] and a forty-five-day deadline. Opp'n (dkt. 43) at 1–2. Most of Pena's opposition brief addresses the substance of his concerns rather than the timeliness of his claims. *See generally id.*

**III.   ANALYSIS**

   **A.   Legal Standard**

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

---

[8] The thirty-day deadline references in USPS's briefs was a deadline set by Pena's 2012 settlement agreement to raise any breach of that agreement.

7

(alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained: "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342. Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

### B. Title VII and Rehabilitation Act Claims

#### 1. Timeliness

Title VII prohibits discrimination based on race (among other protected categories) and retaliation against employees who oppose unlawful practices, including in the context of federal employment. The Rehabilitation Act prohibits discrimination against federal employees based on disability. As discussed in more detail in the Court's previous order, to bring a claim under either of these statutes, a federal employee must first contact an EEO counselor within forty-five days of the alleged discrimination. *See* Order re MTD FAC at 9–11 (citing 29 C.F.R. § 1614.105(a)(1)). The agency then investigates, and the claimant may later file a formal EEO complaint. 29 C.F.R. § 1614.105(c), (d). If the matter is not resolved after the agency issues its final decision, the employee may either: (1) file directly in federal court within 90 days, *id.* § 1614.407(a), or (2) appeal through the EEOC within 30 days, *id.* §§ 1614.401(a), 1614.402(a). If, at any time, the

8

1    employee's complaint sits idle within the administrative process for more than 180 days, the
2    employee has an immediate right to file a civil action in federal court but must do so within 90
3    days. *See* 42 U.S.C. § 2000e-16(c); 29 C.F.R. §§ 1614.407(b), (d). These time limits "are subject
4    to waiver, estoppel and equitable tolling." 29 C.F.R. § 1614.604(c)

The Court previously held that Pena substantially complied with the administrative exhaustion requirements, such that the Court could exercise subject matter jurisdiction under the Ninth Circuit's decision in *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir. 2001). *See* Order re MTD FAC at 13–15. In light of the Supreme Court's recent decision in *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1851 (2019), that "Title VII's charge-filing requirement is a processing rule, albeit a mandatory one, not a jurisdictional prescription," the Ninth Circuit's *Sommatino* decision is no longer good law—substantial compliance with the administrative process remains mandatory to bring a claim, but is no longer jurisdictional. *See Williams v. Wolf*, No. 19-cv-00652-JCS, 2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019) (addressing *Fort Bend* and *Sommatino* in the context of a federal employee's discrimination claims). The distinction does not affect this case, however, because regardless of whether substantial compliance is a jurisdictional limitation or merely a mandatory processing rule, Pena's claims satisfy that test. *See* Order re MTD FAC at 13–15.

The defect in Pena's first amended complaint was Pena's failure to allege either that he initiated contact with an EEO counselor within forty-five days of the conduct at issue, or facts sufficient to forgive such failure under any doctrine of tolling. *Id.* at 15–20. Even before *Fort Bend*, the *timeliness* of a plaintiff's administrative exhaustion was not considered a jurisdictional requirement, but timely contact was (and remains) necessary to state a claim on which relief could be granted. *See id.* at 12–13.

Pena's response to the Court's previous order does not cure the defects in timeliness of his Title VII and Rehabilitation Act claims. Pena's first contact with an EEO counselor was in the spring of 2012. *See* SAC at 1. USPS resolved Pena's first EEO complaint with a mediation and signed agreement on May 4, 2012. *Id.* Pena did not appeal to the EEOC within thirty days or file sue in court within ninety days after that decision. *See id.* at 1–2.

Pena made further contact with an EEO officer in August of 2012 after Carmelita allegedly failed to comply with the terms of the agreement. *Id.* at 2. Even if that contact could somehow be construed as initiating a new formal EEO complaint, for which no administrative action was taken after the EEO officer failed to call Pena back in mid-August, the period for Pena to file a civil action would have been between 180 days and 270 days after that, in the spring of 2013. *See* 42 U.S.C. § 2000e-16(c). Pena did not file this action during that period.

The last potential act of discrimination identified in Pena's filings is likely his commencement of medical leave in October of 2014, or perhaps the failure of Postmaster Ted Viray to give Pena a copy of his personnel file in August of 2016. There is no allegation that Pena contacted an EEO counselor within forty-five days of taking leave or within forty-five days of his written request to Viray, as required to pursue a discrimination claim. *See, e.g.*, *Green v. Brennan*, 136 S. Ct. 1769, 1782 (2016) (holding that the forty-five-day limitations period begins in a constructive discharge claim when an employee resigns). Instead, Pena contacted an EEO office (or perhaps the EEOC) to request paperwork for filing a claim in late November of 2017, more than three years after he began his medical leave and more than a year after Viray failed to give him copies of his personnel file. *See* SAC at 2. The only events that Pena alleges occurred between August of 2016 and November of 2017 are his fruitless effort to obtain assistance from his union and his filing of an NLRB charge against the union. *See id.* at 2–3. As noted in the Court's previous order, pursuing a union grievance is not a substitute for the administrative claims process, nor does it toll the statute of limitations for bringing a claim. *See* Order re MTD FAC at 17 (citing *Int'l Union of Elec., Radio & Mach. Workers v. Robbins & Myers, Inc.*, 429 U.S. 229, 240 (1976); *Vinieratos v. U.S. Dep't of Air Force ex rel. Aldridge*, 939 F.2d 762, 768 (9th Cir. 1991);[9] *Huynh v. U.S. Postal Serv.*, No. 11-cv-03195 NC, 2013 WL 2048681, at *5 (N.D. Cal. May 14, 2013). Pena's belated contact with EEO personnel in late 2017 and 2018 does not satisfy the forty-five day deadline.

---

[9] Like the *Sommatino* decision discussed above, *Vinieratos*'s treatment of Title VII's administrative exhaustion requirement as an issue of federal courts' *jurisdiction* is no longer good law in light of *Fort Bend*, but a plaintiff must still fulfill that requirement to state a claim on which relief may be granted.

10

### 2. Equitable Exceptions

The Court's previous order addressed two equitable principles that might excuse Pena's untimely claims. The Court first addressed the doctrine of equitable tolling, as follows:

> Pena's previous EEO involvement suggests a finding of equitable tolling is unwarranted to save his untimely claims. Tolling "applie[s] to excuse a claimant's failure to comply with the time limitations where []he had neither actual nor constructive notice of the filing period." [*Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)] (quoting *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997)). The focus of the doctrine is "on a plaintiff's excusable ignorance and lack of prejudice to the defendant." *Leong*, 347 F.3d at 1123. Here, Pena was not only familiar with the EEO process because of his prior EEO mediation, *see* FAC ¶ 34, he was also well aware of his claims. Pena requested disability accommodation as early as 2011, *id.* ¶ 25, and reported to his doctor in 2013 that "Lopez had been forcing him, through intimidation and other tactics to perform tasks." *Id.* ¶ 43; *see also id.* ¶ 38 ("On February 13, 2013, [Pena] was interviewed by an employee from human resources regarding [his] charge of harassment and discriminatory practices."). There is no evidence to show that Pena's Title VII and Rehabilitation Act administrative claims should be tolled because he lacked knowledge as to his claims or the 45-day limitations period. In addition, many years have passed since the alleged violations occurred and it would prejudice USPS to be forced to defend against them now.

Order re MTD FAC at 18–19 (some alterations in original). Neither Pena's response to the Court's order nor his brief in opposition to USPS's present motion provides any basis to depart from that conclusion. Even if Pena was unaware of the forty-five-day deadline (despite having previously filed an EEO complaint and pursued that process through mediation), the years-long delay from his 2014 medical leave to his 2017 EEO contact prejudiced USPS in that multiple relevant employees retired during that time and all relevant witnesses' memories would have faded. The Court further notes that there is no indication that Pena's years-long delay, with only sporadic efforts to pursue other avenues of relief such as requesting his personnel file and complaining to his union and the NLRB—which the Supreme Court has held does not warrant tolling, *see Myers*, 429 U.S. at 239–40 & n.14—reflects a diligent effort to pursue timely administrative action.

The Court also addressed the doctrine of equitable estoppel, as follows:

> Pena's argument that his untimely filing should be excused under equitable estoppel fares no better. Equitable estoppel primarily relates to a defendant's actions that prevented the plaintiff from making a

11

> timely filing, "above and beyond" the wrongdoing alleged in the suit. *Henderson*, 314 F.3d at 414. Courts may consider, among other factors, whether the plaintiff relied on the defendant, evidence of deceit by the defendant, and "the extent to which the purposes of the limitations period have been satisfied." *Id*. (quoting *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000), *overruled on other grounds by Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1194–96 (9th Cir. 2001) (en banc)). "Equitable estoppel in the limitations setting is sometimes called fraudulent concealment . . . [and] may apply against an employer when the employer misrepresents or conceals facts necessary to support a discrimination charge." *Santa Maria*, 202 F.3d at 1176–77 (internal citation and quotation marks omitted). Pena alleges no such conduct.

Order re MTD FAC at 19. The Court acknowledged that Pena had alleged that USPS officials failed to provide his personnel file during the intervening years between his commencement of medical leave and his 2017 EEO contact, but concluded both that Pena's efforts to obtain the file fell outside of the forty-five-day limitations period and that Pena failed to explain why lack of access to the file prevented him from contacting the EEO. *Id.* at 19–20. Nothing in Pena's filings since that order alters that conclusion.

To the extent that a USPS EEO officer's failure to respond to Pena in August of 2012 might warrant some leniency in filing deadlines, it does not rise to the level of justifying a more than five-year delay from that interaction to Pena's contact with the EEO office in November of 2017. Absent factual allegations of affirmative misconduct by USPS personnel somehow preventing Pena from contacting an EEO official or actively misleading him about the process to do so—which Pena has neither alleged nor indicated that he could allege—the Court declines to apply equitable estoppel to extend a deadline from forty-five days to a period of several years. USPS's motion is GRANTED as to these claims.

### C. ADEA Claims

The ADEA prohibits certain forms of discrimination based on age, including in the context of federal employment. As discussed in the Court's previous order, a federal employee plaintiff may pursue such a claim either through the EEOC or by filing suit in court in the first instance. *See* Order re MTD FAC at 20–21. Even where the plaintiff chooses to begin in court rather than pursue an administrative claim with the EEOC, however, the plaintiff must notify the EEOC of the plaintiff's intent to sue within 180 days of the alleged discrimination and then wait 30 days to file

12

a civil action. *Id.* at 21 (citing 29 U.S.C. § 633a(d)).

There remains no indication that Pena ever notified the EEOC (rather than the USPS EEO) of his intent to sue. Even if his complaint could be construed as alleging that he provided such notice in November of 2017, that would fall well outside the 180-day deadline for him to do so. And for the same reasons discussed above in the context of his Title VII and Rehabilitation Act claims, Pena has not shown that he is entitled to any equitable relief from that notice requirement or the deadline to provide such notice. USPS's motion is therefore also GRANTED as to Pena's ADEA claim.

## IV. CONCLUSION

For the reasons discussed above, USPS's motion is GRANTED, and Pena's claims are DISMISSED for the same reasons as stated in the previous order dismissing his first amended complaint. Pena failed to cure these defects despite the Court's previous order identifying them. The Court therefore concludes that further leave to amend would be futile, and dismisses this action with prejudice. The Clerk is instructed to enter judgment of dismissal and to close the file.

**IT IS SO ORDERED.**

Dated: March 18, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

13